

FILED
2010 Aug-05  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM E. O'NEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-1701-E |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, William E. O'Neal, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether he has a severe impairment;

(3)   whether his impairment meets or equals one listed by the Secretary;

(4)	whether the claimant can perform his past work; and

(5)	whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Robert L. Hodges determined the plaintiff met the first two tests, but concluded that while he has an impairment or combination of impairments considered "severe," he did not suffer from a listed impairment.  In his decision, the ALJ found that the plaintiff, "[w]ith no more than moderate pain," can:

> stand one hour uninterrupted and two hours total, walk one hour uninterrupted and two hours total, and sit two hours uninterrupted and hour hours total in an eight-hour workday.  [And he] . . . can lift and carry 15 pounds frequently and 20 pounds occasionally.  [And he] . . . occasionally can climb, balance, stoop, kneel, crouch, and crawl. . . .

[R. 17].  Accordingly, the ALJ found the plaintiff able to perform a less than full range of light work, and is therefore not disabled.  [R. 21].

### THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.  Therefore,

if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as

true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

### WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

### DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "lumbar degenerative disc disease; a history of avascular necrosis, status post hip replacement; osteoarthritis; non-insulin dependent diabetes mellitus; obesity; and diabetic neuropathy. . . ." [R. 16]. degenerative disc disease of the lumbosacral spine, degenerative joint disease of the left knee, and hypertension." [R. 17]. However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ." [R. 17]. The ALJ concluded under step four of the sequential evaluation that the plaintiff cannot perform

his "past relevant work as an electrician, skilled work requiring medium exertion as defined by the vocational expert."  [R. 20]. Based on the vocational expert's responses to interrogatories, the ALJ found the plaintiff able to perform other work in the national economy.  [R. 21].

The plaintiff was 52 years old at the time of the ALJ's decision. He had initially alleged disability as of September 22, 2005, but at the hearing the plaintiff amended the onset date to April 1, 2006.  [R. 76].   The ALJ noted:

> The claimant alleges he cannot work due to chronic, debilitating back pain and dysfunction; left leg pain; swelling in his feet; and blurred vision.  He testified that he uses a can everywhere he goes although it was not prescribed.  He said he cannot bend and that his pain gets worse as the day progresses.  He said that he can sit for 30 to 40 minutes and that he spends most of the day sitting upright, although he lies down every day for a 2½ to 3 hour nap.

[R. 18].  In applying the Eleventh Circuit's pain standard, the ALJ found that medical evidence shows that  the plaintiff "has underlying medical conditions, but it does not support his allegations of severe and chronic pain and limitation of function to the degree that it would preclude the performance of all substantial gainful activity."  [R. 18-19]. This statement is not supported by substantial evidence.

On March 27, 2008, the plaintiff was examined by Oscar Fadul, M.D., at the request of his attorney.  Dr. Fadul noted the plaintiff's history of "severe lumbosacral pain syndrome, residual of prior left and right hip replacements, diabetes and arthritis." [R. 175].  On examination, Dr. Fadul stated, "The patient has very limited range of motion when asked to bend down and touch the floor."  [R. 176].  He attributed the

plaintiff's difficulty climbing onto the examination table to his excessive weight.  [Id.]. Dr. Fadul diagnosed degenerative disc disease of the lumbar spine with chronic low back pain, history of avascular necrosis of the right hip, status post right hip replacement, probable osteoarthritis, diabetes mellitus, type 2, hypertension and hyperlipidemia.  [Id.]. Dr. Fadul completed a Physical Capacities Evaluation of the plaintiff, in which he limited the plaintiff to carrying 10 pounds occasionally or less frequently.  [R. 177].  He opined that the plaintiff could sit for one hour and stand and walk for one hour, for a total of two hours in an eight-hour day.  [Id.].  Although he did not think the plaintiff required an assistive device to walk, he did opine that the plaintiff should never push or pull with arm or leg controls, and never climb stairs or ladders and balance.  [Id.].  Dr. Fadul completed Clinical Assessment of Pain and Clinical Assessment of Fatigue/Weakness forms in which he determined that the plaintiff's pain, fatigue and weakness were "intractable and virtually incapacitating," and that physical activity would greatly increase the plaintiff's pain, fatigue and weakness "to such a degree as to cause distraction from tasks or total abandonment of work."  [R. 179, 181-182].

       At the June 13, 2008, ALJ hearing, vocational expert testified as follows:

Q: Have you reviewed the vocational history of the Claimant and heard his testimony?

A: I have.

Q: Do you have any questions to him to clarify his work history?

A: No, Your Honor.

Q: I have not shown Exhibit 9F, which is a physical capacity evaluation by Dr. Feudal [phonetic] at Exhibit 9F. I might show that to the vocational expert because I state for the record that if it's critical it's obviously disabling. Would you classify his past relevant work, please, ma'am.

A: Yes, electrician. It's medium exertion, and it's skilled. The SVP is 7.

Q: Medium and skilled?

A: Yes.

Q: Does he have any transferrable skills to sedentary work?

A: No, Your Honor.

Q: Ms. Chapman?

ATTY: I have no questions, Your Honor.

Q: Mr. Oneal [sic], as soon as we get this examination done that's scheduled in 13 days, we'll get a report of that. I'll make sure Ms. Chapman has an opportunity to look at that. I might be able to decide the case without forwarding it to your attorney. I'll have to see what it says. Anyway, when that happens, I'll review everything in your case to make sure I haven't missed anything, and I'll decide quickly what to do, but it's not an official Decision until it gets put in writing pursuant to my instructions and I sign it. Once that happens a copy will be mailed to you and a copy to Ms. Chapman. If you have any questions before you get that Decision in the mail, we'd be happy to try to answer them, but rather than call us directly to this office if you'll direct your questions to your attorney. It's better for us to discuss the case through the attorney. Thank you, sir. The hearing is adjourned.

[R. 47-48].

In his decision, the ALJ rejected the opinion of Dr. Fadul, opting instead to adopt the findings of Younus M. Ismail, M.D.[1], who examined the plaintiff at the Commissioner's behest on June 26, 2008, after the hearing. Dr. Ismail's examination of the plaintiff's lumbar spine revealed:

> The patient has a normal dorsolumbar spine. There is no evidence of any kyphosis or scoliosis. The patient has some pain in the midback and the lower back area. Some tenderness over the lumbar spine. Mild spasm of the lumbar paraspinal muscle is noticed. The patient's forward flexion is restricted to 30° and extension is less than 10°. Lateral flexion and lateral rotation is around 15°. The patient is not able to raise the straight leg after 30° as he start [sic] hurting in his lower back area.

[R. 187]. Dr. Ismail also examined the plainitff's lower extremeties:

> There is some crepitance [sic] noticed over both the knees. The patient also has some pain on the movement of the right knee. There is no obvious deformity noticed on the lower extremity examination.
>
> \*     \*     \*
>
> Despite some pain in both the knees, range of movement of the knee is within normal limit[s]. Dorsiflexion, planter [sic] flexion, inversion and eversions of the ankles are within normal limit[s]. The patient has a slightly staggering gait. He is using a walking stick on the day of examination. The patient does not have any braces. The patient has difficulty getting up from the sitting positions. He is not able to do heel-toe walking and squatting because of the back pain and the obesity.

[R. 188]. Dr. Ismail's diagnoses were chronic back pain, possible degenerative disc of the spine, non-insulin dependent diabetes mellitus, and hypertension. [Id.]. Dr. Ismail's conclusion was:

---

[1] At the hearing, the ALJ referred to the upcoming examination by Dr. Ismail as an "orthopedic CE." [R. 36]. According to the plaintiff, Dr. Ismail is a internist. [Pla's Brief at 10].

> The patient is a 52-year-old male with history of chronic back pain, has [been] diagnosed with degenerative disc disease. Presently, he is not seeing any specialist. Proper medical evaluation, subsequent treatment as well as weight reduction and occupation rehabilitation will be beneficial.

[Id.].

Dr. Ismail also completed a Medical Source Opinion (Physical), in which he limited the plaintiff to standing one hour at a time for a total of two hours per day, walking one hour at a time for a total of two hours a day, and sitting two hours at a time for a total of four hours per eight-hour day. [R. 184]. He thought that the plaintiff could lift and carry 10 pounds constantly, 15 pounds frequently, and 20 pounds occasionally, but that the plaintiff should never carry more than 30 pounds. [Id.]. Dr. Ismail stated that he had completed the form based primarily on the plaintiff's subjective complaints. [R. 185].

On August 13, 2008, the ALJ proposed the following interrogatories to the vocational expert:

> Assume a person of the claimant's age, education and a past relevant work history, review the enclosed report of consultative examination of Dr. Younus M. Ismail, Exhibit 10-F, assume no more than moderate pain, and answer the following interrogatories:
>
> > 1.   If you assume that the medical source opinion portion of the report of Dr. Ismail is credible, could the claimant perform any of her [sic] past relevant work?
> >
> > 2.   Would there be other work represented by significant number of jobs in the regional and national economy such a person could perform, giving examples, skill and exertional level classification and Dictionary of Occupational Title numbers.

[R. 136]. In response to the first interrogatory, the vocational expert replied:

> No, his past relevant work as an Electrician is classified as Medium exertion level. Although he reported he was a Supervisor, which is Light exertion, the claimant testified that he was a working supervisor, which required him to perform at the Medium exertion level.

[R. 135]. In response to the second interrogatory, the vocational expert listed Assembler, Ticket Marker, and Laundry Sorter as other work represented by significant numbers of jobs in the regional and national economy that the hypothetical person could perform at the Light and Unskilled exertional level. [Id.].

In order to find the plaintiff not disabled, the ALJ found he was capable of doing light work[2]. The court notes that this plaintiff, as a person closely approaching

---

[2] The Commissioner's regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The definition of light work has been further clarified by Social Security Ruling 83-10:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> <u>"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two- thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.</u> Sitting may occur intermittently during the remaining time. The lifting requirement for

(continued...)

advanced age, would meet the Medical Vocational Guidelines at the sedentary level of exertion if his skills were not transferrable. As noted earlier, the vocational expert testified that the plaintiff has no transferrable skills to sedentary work. [R. 47]. The ALJ erred in failing to find the plaintiff disabled under Medical Vocational Rule 201.14. Any conclusion by the ALJ that the plaintiff could perform more than sedentary work is not supported by substantial evidence.

### CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

DONE and ORDERED 5 August 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

---

² (...continued)
the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10 **5-6 (emphasis added).

14